IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| SANDY RUTHERFORD § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Case No. |
| § | JURY DEMANDED |
| SHELBY COUNTY § | |
| GOVERNMENT § | |
| § | |
| § | |
| Defendant. § | |

_____

## COMPLAINT
_____

**COMES THE PLAINTIFF, SANDY RUTHERFORD**, filing this Complaint against **SHELBY COUNTY GOVERNMENT**. She shows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Sandy Rutherford, is a citizen and resident of Shelby County, Tennessee.

2. Defendant, Shelby County Government, is a governmental entity operating in Shelby County, Tennessee where it employs the Plaintiff.

3. This Court has subject matter jurisdiction under 28 U.S.C. §1331 and Title VII of the Civil Rights Act, 42 U.S.C. §2000(e) et. seq., the Equal

Pay Act, 29 U.S.C. §206(d), and the Family and Medical Leave Act, 29 U.S.C. §2601 et. seq..  Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, including the Tennessee Human Rights Act at Tenn. Code Ann. §4-21-101 *et seq*.  Plaintiff has exhausted administrative prerequisites, filing charges of discrimination with the EEOC, receiving a Notice of Suit Rights, and timely commencing this action within 90 days of her receipt of the Notice.

4.      Venue in this Western District of Tennessee, Western Division, is proper pursuant to 28 U.S.C. §1391, because the Defendant was either doing business in this district or resides in this district, and a substantial part of the events or omissions giving rise to this action occurred in this district.

## FACTUAL BASES FOR SUIT

**A.     EQUAL PAY ACT**

5.      In 2010, Plaintiff, who is female, performed a job for Defendant referred to as "Legislative Office Manager" in the County Commission Office. She was charged to direct the work of five staff members, and charged with serving two commissioners full time.

6.      A male, Clay Perry, performed a job referred to as "Deputy Administrator" in the County Commission Office.  He was charged to direct the work of four staff members.

7. Despite their different job titles, the actual *duties* assigned to these jobs were exceptionally close, and did require equal skill, effort, responsibility, and were performed under similar working conditions. To wit, Plaintiff regularly performed ten areas of job responsibilities outlined by Defendant for the Deputy Administrator position held by Mr. Perry. Moreover, the two had equivalent education and experience.

8. Further, whereas Defendant has taken the position, at the administrative level, that Plaintiff, unlike the Deputy Administrator, did not have legislative functions or required committee meetings, this is simply not the case. Plaintiff was required to attend committee meetings and Commission meetings and did so; she maintained records of the Commission Committee proceedings; she drafted, analyzed, and corrected ordinances and resolutions of the Commission; and she provided staff support during Commission, committee and community meetings. Plaintiff also completed legislation such that there was hardly any difference between the legislative duties performed by Plaintiff and performed by Perry.

9. Additionally, Defendant had an organizational chart showing that Plaintiff reported to Clay Perry, but, in actual practice, Plaintiff reported to the Chief Administrator, Mr. Steve Summerall, same as Mr. Perry. This was because, once Plaintiff was hired, she was informed, by Mr. Summerall,

that the organizational chart was not accurate, that Perry was not to be a supervisor of Plaintiff and that, instead, Plaintiff must report directly to Summerall, which she did.  Summerall went on to address Perry's known limitations and how Summerall would be relying upon Plaintiff in that regard.

     10.    Despite the similar positions and duties, Perry, a male, was paid substantially more than Plaintiff, a female.

     11.    The discrimination became all-the-more pronounced because Perry neglected (or was not capable of) much of his own position and, as a result, Defendant required Plaintiff to perform both *her job as well as much of Perry's job*.  Still, Defendant paid Plaintiff substantially less than it paid Perry.

     12.    Plaintiff complained under Title VII and the Equal Pay Act by letter of April 11, 2011.  She requested intervention from Human Resources.

     13.    Defendant, through its Human Resources Department, engaged in a selective investigation which was out-come oriented rather than focusing on what was *actually occurring in practice* (sex discrimination and unequal work/pay).  Moreover, Defendant did not even use the actual job duties to assess the Deputy Administrator position.

     14.    Plaintiff challenged Defendant's findings, with additional

evidence and information, by letter of April 29, 2011, citing unequal pay, gender discrimination, and violations of Title VII.  But Plaintiff's challenge was ignored.

## B.     HOSTILE WORK ENVIRONMENT

15.     With no assistance from management or human resources, things became worse, not better, with a grossly disproportionate amount of the work being heaped upon Plaintiff.

16.     For example, Defendant's Department records showed Perry abusing company time, sometimes up to 100 hours in a month, on internet cites like: chat.blackpeoplemeet.com; pmi.peoplemedia.com; www.true.com; vs.blackplanet.com; hellobeautiful.com; chat.blackpeoplemeet.com and facebook.com.  Yet Defendant's human resources department refused to examine the *actual* practice of the *actual* work being performed (or not performed).

17.     The differential and disproportionate treatment became so severe as to be abusive, and it physically and emotionally harmed Plaintiff.

18.     Additionally, Perry would print provocative pictures of women and leave them on the office printer, which Plaintiff found offensive and harassing.

19.     Plaintiff performed Perry's job, which included projects, staff

delegated tasks, and activities of an administrative, legislative, research, and managerial nature.

20.  Plaintiff's reports of such differential treatment of a man, Perry, versus Plaintiff, a woman, to Defendant were not remedied.  Defendant, through Mr. Summerall, played both sides of the fence, telling Plaintiff that he understood how, in practice, Plaintiff was performing a disproportionate amount of the work unfairly, but that he was just "not in a position to do anything about it."  Meanwhile, Perry, emboldened by the complete lack of discipline or order, told Plaintiff that another woman who made a complaint "came up missing" and that her "body was found in the Mississippi River."

21.  Eventually, to support the pretense that Perry's work was a higher order and contained different responsibilities than Plaintiff's, Plaintiff was told that she was now going to be reporting to Perry.  Chief Administrator Summerall would even write an email suggesting (incorrectly, and knowingly so) that Plaintiff had always reported to Mr. Perry.  This was pretextual because, in actuality, Plaintiff was required by Defendant to do her job, much of Perry's job, and, in actuality, she was required to (and did) report to the Chief Administrator.  This passive-aggressive approach—passively telling Plaintiff she was right, and he understood, but aggressively saying otherwise in print—fueled the problem.

22. Perry's habits continued unabated, while his staff would frequently come to Plaintiff for basic feedback and reports. Plaintiff's workload became crushing to the point of having a breakdown due to acute work related stress disorder.

## C.   FMLA

23. Plaintiff suffered a "serious health condition," acute stress and other DSM diagnoses, requiring a complete leave of absence from work, due to Defendant's abusive working environment. She therefore requested FMLA leave which Defendant granted, initially, from May 4, 2011 until May 24, 2011.

24. Defendant approved an extension of the FMLA leave by granting it until July 26, 2011. Defendant's FMLA Specialist, Janis Watkins, advised Plaintiff in writing that Plaintiff would exhaust her FMLA leave on July 26, 2011. Plaintiff relied upon this advice.

25. On July 19, 2011, Plaintiff saw her medical provider. Having fully recuperated, she obtained a full duty release to return to work on July 26, 2011.

26. Plaintiff timely provided this medical release to Defendant— before her scheduled return to work date on July 26, 2011.

27. Despite the substantive right to job restoration required of

Defendant by the FMLA, Defendant failed and refused to return Plaintiff to work on July 26, 2011.

28.     Defendant kept Plaintiff off work approximately nine weeks (until September 15, 2011) and, at that point, returned her to a completely different job.

**D.     SEX DISCRIMINATION AND RETALIATION**

29.     Due to Plaintiff's legally protected complaints of unequal pay and gender discrimination, Defendant denied Plaintiff a return to her position and, as referenced hereinabove, kept Plaintiff off work for nine week.

30.     Upon her eventual, delayed return in September of 2011, Plaintiff had desired to return to her position of Legislative Office Manager where she had honed her skills (so long as Perry was prevented from derelict of his own duties, and she was paid equally to his position).  However, Defendant refused to reinstate her to her position and give her the appropriate pay.

31.     Instead, Defendant placed Plaintiff in a different position of Grants Compliance Officer and kept the discriminatory pay level in place. Defendant told Plaintiff this was the *only* position into which she could be placed.   This position of Grants Compliance Officer did not utilize Plaintiff's strengths or interests as the Legislative Office Manager position had.

## CAUSES OF ACTION

32. Plaintiff brings the following causes of action against Defendant:

   A. **Violation of Equal Pay Act and Tennessee Human Rights Act for Unequal Wages (continuing);**

   B. **Title VII and THRA Hostile Work Environment/Sex Discrimination;**

   C. **FMLA (Interference with FMLA Rights, including Restoration of Job; and Retaliation); and**

   D. **Title VII and THRA Retaliation.**

33. As damages and relief, Plaintiff requests equal pay (back and front), reinstatement to her Legislative Office Manager job (with equal pay), liquidated damages, and compensation for the emotional harm suffered from the hostile work environment (anxiety, worry, fear, depression, and other indicia of distress, etc.) and other discriminatory and retaliatory actions. She seeks her attorneys fees and costs.

34. Plaintiff demands a jury.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests Defendants Answer this Complaint, that Plaintiff be Awarded all compensatory damages available, wage loss damages available, differential pay (continuing), liquidated damages, any other equitable relief, her attorneys fees, costs, prejudgment interest and post-judgment interest, and

any further relief at either law or equity to which she may be entitled.

>Respectfully submitted,

>**GILBERT RUSSELL McWHERTER PLC**

>/s Justin S. Gilbert
>Justin S. Gilbert (TN Bar No. 017079)
>Jonathan L. Bobbitt (TN Bar No. 023515)
>Jessica F. Salonus (TN Bar No. 2815)
>101 North Highland
>Jackson, TN 38301
>Telephone: 731-664-1340
>Facsimile: 731-664-1540
>jbobbitt@gilbertfirm.com
>jgilbert@gilbertfirm.com
>jsalonus@gilbertfirm.com

>ATTORNEYS FOR PLAINTIFF